**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UDO STEUDTNER, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> DUANE READE, INC., DUANE READE : <br> HOLDINGS, INC., OAK HILL CAPITAL : <br> PARTNERS, L.PL, WALGREEN CO., : <br> JERRY RAY, AND JOHN DOES A-Z, : <br> : <br> Defendants. : <br> : <br> : | Civil Action No. 11-7638 (SRC) <br><br> OPINION |

**CHESLER**, District Judge

      This matter comes before the Court upon the motions by Defendant Duane Reade, Inc. ("Defendant" or "Duane Reade") for summary judgment on all claims filed by Plaintiff Udo Steudtner ("Plaintiff") [docket entry 58], and for Rule 11 sanctions [docket entry 67]. Plaintiff opposes both motions and seeks sanctions against Defendant. The Court has considered the papers filed by the parties, and it proceeds to rule on the motions without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the summary judgment motion will be granted in its entirety, and summary judgment will be entered in favor of Defendant on all claims in the Complaint; the Court will not issue sanctions against either party.

1

I.      **BACKGROUND**

      **A. Factual History**

This case stems from Plaintiff's employment at Duane Reade, and alleged statements that employers made regarding bonuses and salary increases which never came to fruition.

Duane Reade hired Plaintiff as Director of Store Construction in December of 1998. Plaintiff contends that before being hired, he spoke with Duane Reade's CEO, Tony Cuti, who allegedly promised Plaintiff that he would later be put on "executive fast track," after an assessment of his performance. On December 9, 1998, Plaintiff signed an Offer Letter, which provided as follows:

> Your initial salary will be $3,846.16, payable every two weeks. Future salary increases will be annual and will be based on demonstrated job performance against objectives outlined and mutually agreed to between you and your immediate manager. It is committed that you will join the company's performance incentive plan at fifteen percent (15%) of your annual salary. This program is based upon company performance towards profit objectives and can be increased or decreased based on total company performance and your individual performance.

(Finger Decl., Ex. D.)

Approximately six months later, in mid-1999, Plaintiff again spoke with Cuti. Plaintiff raised the issue of his compensation and said he had only received 15% bonuses, like other employees. Plaintiff claims that Cuti responded, "We can kick that up to 30 . . . . Well, maybe 20 to 30 . . . . I've got to check with some people on that." (Pl. Dep. 90). Plaintiff asserts that Cuti again referenced looking into an "executive fast track" for him. Yet Plaintiff was unaware of what "executive fast track" meant, he never received any information about it, and it appears that no such program actually existed.

In 2000, Plaintiff complained to Cuti that he had not received an increase in his bonuses. Cuti responded that Plaintiff should not approach him directly about this, and that any such inquiries should instead go through Jerry Ray. In 2001, Plaintiff spoke with Ray. Ray pointed out that bonuses were tied to Duane Reade's performance incentive plan, whose targets are set by an Earnings Before Income, Taxes and Depreciation ("EBITDA") scheme. Ray stated that Plaintiff was "part of the group" and informed him that he would not receive extra bonuses. (Pl. Dep. at 107).

Plaintiff did not have any further conversations with Duane Reade management about bonuses. Accordingly, he remained at the 15% bonus level set forth in his Offer Letter. Generally, however, if Duane Reade failed to meet its EBITDA objectives, it did not pay out bonuses. And from September 2001 to 2006, Duane Reade failed to meet its EBITDA targets; accordingly, bonuses were largely foregone. Plaintiff only received two non-quarterly bonuses during this period.

In 2001, Plaintiff spoke with Duane Reade's Director of Human Resources, James Rizzo, about his position and salary. Rizzo expressly stated that Plaintiff was not going to be promoted to another position. Plaintiff never had any further conversations about his position or his salary, which started at $100,000 annually, but which eventually increased to $150,000.

Plaintiff's primary tasks at Duane Reade were to build new stores and to supervise that process. Plaintiff claims that during the course of his employment, he "got involved" with other, additional tasks. Specifically, he says that he filed grants, wrote a book, disposed of fines, and ensured that the company complied with the Americans with Disabilities Act. Plaintiff never spoke with anyone about receiving additional compensation for these tasks, nor does he claim

that he was promised any additional income for completing them.

In October 2005, Plaintiff submitted a letter of resignation, and he stopped working at Duane Reade on February 24, 2006.

**B. Procedural History**

Plaintiff filed this lawsuit on December 31, 2011. He argues that Defendant breached its contractual obligations to him, and that he is entitled to recover under a theory of quantum meruit. Defendant answered in March 2012.

In April 2014, Defendant moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1 of the Local Civil Rules for the District of New Jersey. On June 9, Plaintiff opposed the motion.

Defendant argues three points in support of its motion. First, it asserts that the Statute of Limitations bars all of Plaintiff's proposed theories of relief; in other words, that Plaintiff's suit is untimely. Second, Defendant urges that Plaintiff's breach of contract claims fail because any oral promise that he alleges would violate the Statute of Frauds, they did not create contractual obligations, and they pertained to bonuses that were entirely discretionary. Third, Defendant contends that Plaintiff's quantum meruit claim fails because Plaintiff lacked a reasonable expectation of additional compensation, and he was paid for the value of his services.

Plaintiff counters that all of his claims are timely, and that the Statute of Frauds is inapplicable. On the merits, Plaintiff urges that his offer letter constituted an enforceable contract, as did various oral promises made by management. Alternatively, Plaintiff claims that he is entitled to quantum meruit compensation.

4

## II. DISCUSSION

### A. Standard of Review

The standard upon which a court evaluates a summary judgment motion is well-established. Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Kreschollek v. S. Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. See Boyle v. County of Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Anderson, 477 U.S. at 247-48. The Supreme Court has held that and Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)); Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993).

B.     Timeliness

The Court begins by noting that all of Plaintiff's claims appear to be time barred. Both Plaintiff and Defendant primarily cite New York substantive law as governing this action, given that the bulk of Plaintiff's employment activities took place in that State. See Perry v. Prudential-Bache Sec., 738 F. Supp. 843, 854 n.6 (D.N.J. 1989) ("[E]mployers in New York should not be subject to differing rules of law based upon the varying location of employees' domiciles."); Shamley v. ITT Corp., 869 F.2d 167, 171 (2d Cir. 1989) (New York had most significant contact with litigation because New Jersey resident worked in New York every day at employer's New York office). New York's Statute of Limitations for breach of contract claims and quantum meruit claims is six years. NY CPLR § 213; Eisen v. Feder, 763 N.Y.S. 2d 279, 280 (App. Div. 2003).

With respect to the allegations of contractual breach, the six-year period of limitations begins to run from the date of the alleged breach. ABB Indus. Sys. v. Prime Tech., 120 F.3d 351, 360 (2d Cir. 1997); T & N PLC v. Fred S. James & Co., 29 F.3d 57, 60 (2d Cir. 1994). Here, if Duane Reade was contractually obligated to put Plaintiff on an "executive fast track," that obligation was breached in 2001, when Rizzo informed Plaintiff that he was not being promoted. Similarly, if Duane Reade was contractually obligated to pay Plaintiff extra bonuses, that obligation was also breached in 2001, when Ray told Plaintiff that he was not going to receive any special bonuses. Thus, any conceivable contractual breach took place long before December 31, 2005, six years before this lawsuit was filed.

With respect to quantum meruit, the Statute of Limitations on such claims runs from when the final services were performed. Kramer Levin v. Aronoff, 638 F. Supp. 714, 722

(S.D.N.Y. 1986). If, however, the person seeking compensation learned at an earlier date that compensation was not going to be paid, the limitation period runs from that earlier date. See German v. Pope John Paul II, 621 N.Y.S. 2d 311, 312 (App. Div. 1995) (dismissing quantum meruit claim because plaintiff "first became aware" of the actions giving rise to that claim more than six years before suit). Plaintiff seems not to allege that he performed any specific extra service after December 31, 2005. Either way, by December 31, 2005, he had already become aware that was not going to receive what he believed he was entitled to. The clock on his quantum meruit claim ran from when he knew no additional compensation was coming; accordingly, it too is time barred.

Plaintiff urges that these time limitations should not apply because under the "continuing violation doctrine," the statute of limitations tolled. Under that doctrine, ongoing wrongful conduct will extend the time to file suit. See Guilbert v. Gardner, 480 F.3d 140, 150 (2d Cir. 2007). For the reasons just discussed, however, the Court finds that even if Duane Reade broke any of its promises regarding bonuses or Plaintiff's position, it did so long before December 31, 2005.[1] After 2001, there were no misgivings about Plaintiff's position or entitlement to bonuses, and thus there was no continued wrongful activity.[2]

---

[1] Plaintiff points to criminal conduct at Duane Reade as evidence that there was a continuing violation which tolled his time to file suit. Yet the continuing violation doctrine does not toll the clock whenever misconduct exists; it must be the misconduct that constitutes the alleged breach. Here, any criminal conduct has no bearing on Plaintiff's entitlement to bonuses or compensation.

[2] Defendant claims that Plaintiff's suit is also barred by the Statute of Frauds, which requires certain promises to be written. Yet it applies to "only those agreements which have no possibility of being performed within one year." Stillman v. Kalikow, 802 N.Y.S.2d 714, 716 (2nd Dept. 2005). Because Plaintiff was an employee at-will, it appears that promises surrounding his employment could have feasibly been performed within one year.

### C. The Merits of Plaintiff's Claims

Even if Plaintiff's claims were timely filed, the Court finds that Defendant is entitled to summary judgment as to each. For the reasons that follow, Plaintiff has failed to set forth facts to establish the elements of his proposed legal theories. Berckeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006).

### 1. Contract Claims

Plaintiff's claims regarding oral contracts made by Duane Reade management all fail for the same reason: Plaintiff never received a definitive promise regarding additional bonuses or an elevated promotional pace.

An agreement with indefinite material terms is not enforceable. Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher, 436 N.Y.S.2d 247, 249 (1981) ("definiteness as to material matters is of the very essence in contract law."). "[B]efore the power of law can be invoked to enforce a promise, it must be sufficiently certain and specific so that what was promised can be ascertained." Id.; see also Gutkowski v. Steinbrenner, 680 F. Supp. 2d 602, 609 (S.D.N.Y. 2010) ("a contract must be sufficiently 'definite' to be enforceable"). To sustain a contractual claim, it must be demonstrated that there was a "meeting of the minds" that was breached. See Miranco Contracting, Inc. v. Perel, 816 N.Y.S.2d 516, 516-17 (App. Div. 2006).

In this case, there are no definitive oral promises. Cuti's alleged 1998 statement regarding a fast track contained no explanation whatsoever as to what that meant, when if ever it would become effective, or what kind of future assessment it was conditioned on. Similarly, Cuti's alleged 1999 statement regarding increased bonus entitlement was conditional, as Cuti said Plaintiff's bonuses "maybe" could be increased, but that he would have to discuss the matter

with others.  These statements fall far short of the definitiveness required to constitute an enforceable contract with respect to compensation and entitlements.  See Major League Baseball Props., Inc. v. Opening Day Prods., Inc., 385 F. Supp. 2d 256, 271 (S.D.N.Y. 2005); Gutkowski, 680 F. Supp. 2d at 610; Joseph Martin Delicatessen, Inc., 436 N.Y.S.2d at 249.

      At most, all of the oral statements to Plaintiff regarding heightened bonuses or a "fast track" rose only to the level of assurances, which are distinct from offers of contractual obligations.  See Harkavy v. Apparel Indus. Inc., 1974 U.S. Dist. LEXIS 8836 at *6 (S.D.N.Y. Apr. 25, 1974) ("a mere expression of intention or general willingness to do something on the happening of a particular event or in return for something to be received does not amount to an offer."); see also Freedman v. Pearlman, 271 A.D.2d 301, 303 (App. Div. 2000) (dismissing claim for breach because employer's "promise" of "fair compensation" was "too indefinite to be enforced."); Ellis v. Provident Life & Accident Ins. Co., 3 F.Supp. 2d 399, 410 (S.D.N.Y. 1999) (finding no "specific and definite promise" where employer told plaintiff "not to worry" and that his current compensation would not be changed).

      Given this absence of any concrete promise, nor any surrounding conduct that might demonstrate a meeting of the minds regarding additional bonuses or promotions, Plaintiff's cursory argument regarding an implied contract similarly fails.  See generally Ancile Inv. Co. Ltd. v. Archer Daniels Midland Co., 784 F. Supp. 2d 296, 303 (S.D.N.Y. 2011) (finding that an implied contract requires contractual elements and inference that the parties intended to agree).

      Though Plaintiff's Complaint focuses squarely on these oral assertions, his opposition papers in this motion have also emphasized Plaintiff's offer letter, which promises Plaintiff a 15% bonus entitlement.  Yet this letter expressly conditions Plaintiff's entitlement to bonuses on

the company's performance: "[Y]ou will join the company's performance incentive plan at fifteen percent (15%) of your annual salary. This program is based upon company performance towards profit objectives and can be increased or decreased based on total company performance and your individual performance." Duane Reade failed to meet its performance objectives set forth under EBITDA from September 2001 to 2006, and therefore it was not contractually obligated to give Plaintiff bonuses under this plan.

Under New York law, no claim of breach can be maintained regarding the denial of a discretionary bonus. See Truelove v. NE. Capital & Advisory, Inc., 715 N.Y.S.2d 366, 367-69 (2000); Namad v. Saloman, Inc., 545 N.Y.S.2d 79, 80 (1989); Plantier v. Cordiant PLC, 1998 U.S. Dist. LEXIS 15037 at *8-9 (S.D.N.Y. Sept. 24, 1998). Although Duane Reade's failure to meet EBITDA objectives meant that significantly fewer bonuses were paid out during the course of Plaintiff's employment, "an employee's entitlement to a bonus is [nevertheless] governed by the terms of the employer's bonus plan," Hall v. UPS, 76 N.Y. 2d 27, 36, 556 N.Y.S. 21, 27 (1990). Dissatisfaction with the outcomes dictated by such bonus plans is not recoverable. See generally Truelove v. Northeast Capital & Advisory, 95 N.Y. 2d 220 (2000); Ott v. Fred Hager Mgmt., Inc., 2012 WL 4767200 at *7-8 (S.D.N.Y. Sept. 27, 2012); Levion v. Societe Generale, 822 F. Supp. 2d 390, 401-02 (S.D.N.Y. 2011). For these reasons, Plaintiff has not demonstrated any breach of a promise contained in the Offer Letter.

### 2. Quantum Meruit Claim

Plaintiff's quantum meruit claim also misses the mark. To state a cause of action for quantum meruit, Plaintiff had to allege: "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of

compensation therefor, and (4) the reasonable value of the services allegedly rendered." Tesser v. Allboro Equipment Co., 756 N.Y.S. 2d 253, 254 (App. Div. 2003). Plaintiff asserts that he is entitled to compensation for additional services he performed at Duane Reade.

First, it is unclear whether Plaintiff actually performed any services that truly fell outside the scope of his assigned duties. The various tasks he completed all generally relate to the construction of stores, which undermines his quantum meruit claim. See Freedman, 271 A.D.2d at 304 (rejecting employee's quantum meruit suit where "none of the services allegedly performed [were] so distinct from the duties of his employment . . . [such] that it would be unreasonable for the employer to assume that they were rendered without expectation of further pay"). Moreover, Plaintiff already received payment for the work he did while employed at Duane Reade: namely, his salary, which started at $100,000 but rose to $150,000 by the time he left. See Mance v. Mance, 513 N.Y.S. 2d 141 (App. Div. 1987) (employee who received salary was compensated for services and thus could not recovery for quantum meruit); Cannon v. First Nat'l Bank of East Islip, 469 N.Y.S. 2d 101, 103 (App. Div. 1983) ("Where a person renders services over a long period of time at a fixed rate and is regularly paid, the presumption is that the amount paid was inclusive of all services").

Under the third element, moreover, Plaintiff must have had a "reasonable expectation of compensation." Soumayah v. Minnelli, 839 N.Y.S. 2d 79, 81 (App. Div. 2007.). Largely for the reasons discussed in the above sections, Plaintiff cannot cite a concrete promise or any record evidence that would substantiate a belief that he was going to receive additional compensation. No manager or employee ever told him that he was going to be paid extra for more work.

Finally, under the fourth element, Plaintiff must be able to demonstrate a reasonable value

for the allegedly extra work he performed.  Plaintiff's vague contentions that he is entitled to additional bonuses for a general statement of extra tasks falls short of pleading a "reasonable value" required.  See Fulbright & Jaworski, LLP v. Carucci, 881 N.Y.S. 2d 56, 58 (App. Div. 2009) (plaintiff failed to show "the reasonable value of the services performed for which [he] was responsible").

   D.  **Sanctions**

On August 8, 2014, Defendant moved for sanctions against Plaintiff.  Defendant urges that Plaintiff changed his legal theories mid-litigation and therefore caused delay and increased attorneys' fees.  Defendant additionally stresses that Plaintiff's legal theories lack proper factual bases.  Accordingly, Defendant moves for Rule 11 sanctions against Plaintiff and his counsel.

Plaintiff responded on August 25, claiming that Rule 11 sanctions would be wholly inappropriate with respect to his conduct in this litigation.  With respect to the change in litigation strategy, he argues that his decision to shift focus was a reasonable tactic.  He adds that he should recover the costs of having to defend against what amounts to a frivolous motion.

The Court declines to issue sanctions in this case.  Rule 11 penalties are reserved for "exceptional circumstances."  Pal v. Jersey City Med. Ctr., 2014 WL 3573405 at *8 (D.N.J. 2014).  Although the Court finds that Plaintiff's Complaint rested on thinly constructed legal arguments, and indeed scarce factual support, it cannot conclude that Plaintiff's claims were "patently unmeritorious or frivolous."  Arab African Intern. Bank v. Epstein, 10 F.3d 168, 175 (3d Cir. 1993).  The Court also finds that the Rule 11 motion for sanctions itself was not filed for an improper purpose, and therefore it will not award costs under Fed. R. Civ. P. 11(c)(2).

**III.    CONCLUSION**

For the foregoing reasons, the Court will grant Defendant's motion for summary judgment on Plaintiff's Complaint in its entirety. An appropriate form of Order will be filed herewith.

    s/Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

DATED: October 30, 2014